UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA DAWN LENNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | No. 09 C 2211 |
| v. ) | |
| ) | Senior U. S. District Court Judge |
| MICHAEL J. ASTRUE, ) | George W. Lindberg |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

On April 10, 2009, plaintiff Laura D. Lennon filed a complaint against defendant, Commissioner of Social Security Michael J. Astrue, requesting an administrative review of the denial of Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 405(g). Plaintiff has moved for summary judgment seeking a reversal of defendant's denial of DIB; in the alternative, she asks the court to remand the case for a rehearing. Plaintiff raises the following issues: (1) whether the administrative law judge's ("ALJ") adverse credibility determination was patently wrong; (2) whether the ALJ properly considered the medical evidence and opinions; and (3) whether the ALJ posed an incomplete hypothetical question to the vocational expert. For the reasons stated below, plaintiff's motion for summary judgment is granted.

On January 18, 2007, plaintiff, a 55-year-old female with a bachelor's degree, filed an application for DIB under the Social Security Act. Plaintiff, who alleged that she had been disabled since August 15, 2005, had a combination of physical and mental impairments. The ALJ Daniel Dadabo found that plaintiff suffered from the following: attention deficit disorder, anxiety, dysthymia, personality disorder, asthma, a history of migraine headaches, status post

May 2001 herniated lumbar disc and L4/5 laminectomy, and status post January 2004 motor vehicle accident with head trauma and subsequent cervical fusion from C5-C7.

Plaintiff saw Dr. Concetta Forchetti for an initial neurological evaluation in February of 2007.  Dr. Forchetti determined that plaintiff needed additional neuropsychological testing.  Accordingly, in July of 2007, plaintiff underwent a neuropsychological evaluation performed by Dr. Edna Martin, a licensed clinical psychologist who issued a report following the evaluation.  Dr. Martin concluded that plaintiff was functioning below her pre-morbid level in many aspects of her life.  Dr. Martin also wrote a letter to plaintiff's employer stating that plaintiff needed a consistent work schedule that did not require night hours.  Dr. Forchetti had difficulty interpreting Dr. Martin's conclusions; consequently, in September of 2007, neuropsychologist Dr. Brian Leahy examined plaintiff at Dr. Forchetti's request.  Dr. Leahy administered a battery of tests and concluded that plaintiff had "mildly impaired" attention and "cognitive efficiency" and "normal" executive function, learning and memory, language, and visual-spatial skills.  Dr. Leahy further noted that persistent cognitive deficits were unlikely as a direct result of the head trauma plaintiff sustained in a 2004 car accident.  Finally, Dr. Leahy determined that psychotherapy could help manage plaintiff's somatic concerns.

At an administrative hearing before the ALJ on May 22, 2008, plaintiff testified that she had been working part-time as a cashier.  She further testified that she went on medical leave due to migraines and arm and neck pain that occurred when she worked too many hours.  At the hearing, the ALJ asked vocational expert William Newman ("the VE") what type of work a person with plaintiff's limitations would be able to perform.  The VE was asked to assume the

following:

> The state is taking a point of view that she has only non-exertional limitations meaning that she has to avoid unprotected heights, heavy equipment, operating machinery, we'll say ropes, ladders, scaffolds. And I have the sense on the mental health standpoint [sic]. They actually assess moderate, which is surprising because the doctor who examined her assigned a GAF of 75. But we'll say that this means the work has to be unskilled, has to be learnable on short demonstration. We don't want the public contact work. We also [do not] want work that is going to necessitate extended oral or written communication. Okay?

In response, the VE testified that none of plaintiff's previous work would be available to her. He listed three jobs that could accommodate the limitations mentioned in the ALJ's hypothetical; namely, garment packer, housekeeper, and cafeteria attendant. The ALJ then asked the VE a series of more restrictive hypothetical questions based upon some of plaintiff's statements at trial, statements which the ALJ ultimately found not credible. The VE testified that the limitations imposed by the ALJ in the more restrictive hypotheticals would preclude plaintiff from work in the national economy.

The ALJ found that while plaintiff had a combination of impairments that was severe, she retained a maximum residual functional capacity ("RFC") to perform light work, learnable on short demonstration, involving no public contact or extended oral or written communication. Accordingly, the ALJ found plaintiff not disabled and denied her application for benefits. On March 6, 2009, the Appeals Council denied review of the ALJ's decision, leaving the ALJ's decision as the final decision. Plaintiff subsequently filed this action for review.

When assessing a DIB claim, an ALJ conducts the five-step inquiry established by the Social Security Administration. 20 C.F.R. § 404.1520. On review, the ALJ's decision is affirmed if "it is supported by substantial evidence in the record." *Schmidt v. Astrue*, 496 F.3d

833, 841 (7th Cir. 2007) (citations omitted). The Seventh Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In addition, the ALJ must build an "accurate and logical bridge" between the evidence and his findings. *Berger*, 516 F.3d at 539.

Steps 1, 2, and 3 of the five-step analysis are not at issue in this case. Plaintiff challenges the ALJ's adverse credibility determination and the weight afforded to the medical opinions, two arguments that in concert attack the ALJ's RFC determination at Step 4. At Step 5, plaintiff contends the ALJ posed an incomplete hypothetical question to the VE. The court will address these arguments in turn.

The ALJ found that plaintiff's medically determinable impairments reasonably could be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with plaintiff's RFC. An ALJ's credibility determination receives "considerable deference." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). In evaluating an ALJ's credibility determination, the court examines whether the determination was reasoned and supported. *See Sims v. Barnhart*, 442 F.3d 536 (7th Cir. 2006). An ALJ's credibility finding will only be disturbed if it is "patently wrong in view of the cold record." *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993).

Plaintiff argues that the ALJ's failure to find plaintiff credible is "patently wrong." However, the ALJ provided several well-reasoned explanations for his adverse credibility

determination. For example, he noted that despite plaintiff's claim that migraines and post-concussion syndrome prevented her from working, plaintiff's 2006 CT scan showed that her brain was normal and plaintiff herself testified that she used no pain medication stronger than Aleve to manage her headaches. The ALJ also noted a discrepancy between plaintiff's claim that she could not adhere to a regular work schedule due to chronic post-operative pain and cervical limitations and the fact that plaintiff specifically denied neck pain following her 2004 car accident, obtained an MRI showing satisfactory alignment, and worked part-time as a cashier as well as babysat for six-month old twins just one year after the accident. Plaintiff specifically finds fault with the ALJ's determination that plaintiff's work performance as a cashier contradicted her alleged incapacity to perform even simple work reliably within a schedule. Plaintiff argues that the ALJ mischaracterized plaintiff's work because plaintiff worked only four hours a day, had problems with her memory on the job, often left work early due to migraines, and was on leave at the time of the hearing. However, plaintiff's assertion that the ALJ mischaracterized plaintiff's work activity and incorrectly found plaintiff not credible overlooks the fact that the ALJ assigned to plaintiff an RFC determination that ruled out jobs with those characteristics plaintiff allegedly struggled with as a cashier. Based on the evidence cited by the ALJ, the ALJ's adverse credibility determination was not "patently wrong."

Plaintiff also argues that the ALJ did not properly analyze and consider the medical opinions of Drs. Martin and Forchetti. Plaintiff's claim that the ALJ did not properly address opinion evidence from Dr. Martin is without merit. The ALJ expressly discussed Dr. Martin's opinion in his decision. He noted Dr. Martin's finding that plaintiff had above average

5

intelligence despite some deterioration of pre-morbid functioning, and he additionally mentioned the limitations Dr. Martin listed in her letter to plaintiff's employer; specifically, that plaintiff needed structure, routine, and consistency in the workplace and should avoid late night shifts. Far from not considering Dr. Martin's opinion, the ALJ appeared to credit it.

The ALJ treated Dr. Forchetti's opinion differently. In order to analyze the ALJ's treatment of Dr. Forchetti's opinion, it is first necessary to determine Dr. Forchetti's status as a medical source in this case. A treating source's opinion generally receives more weight. 20 C.F.R. § 404.1527(d)(2). Defendant argues that Dr. Forchetti was not a treating source in this case because Dr. Forchetti only evaluated plaintiff and did not treat her. However, a treating source is "[a] physician, psychologist, or other acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502. The record indicates that plaintiff was Dr. Forchetti's patient from 2006 to 2008 and had at least one evaluation with her. Therefore, Dr. Forchetti was a treating source.

An ALJ must give a treating source's opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). In this case, the ALJ determined that the fact of plaintiff's part-time employment constituted substantial evidence inconsistent with Dr. Forchetti's opinion that plaintiff was disabled. Because Dr. Forchetti's opinion was inconsistent with other substantial evidence in the case record, the court finds that the ALJ's decision to grant

Dr. Forchetti's opinion little weight was reasonable, as well as adequately articulated.

Finally, plaintiff argues that the hypothetical questions posed to the VE failed to include all of plaintiff's limitations; specifically, Dr. Martin's recommendation that plaintiff needed a consistent work schedule that did not require late night hours. The ALJ's conclusion that jobs exist in the national economy which plaintiff can perform was based in part on the VE's testimony in response to hypothetical questions posed by the ALJ. Ordinarily, an ALJ must include in his hypotheticals those limitations supported by evidence in the record. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). However, an exception exists in cases where the VE independently learned of the unmentioned limitations. *Id.* In addition, the Seventh Circuit has held that an ALJ is required to include in his hypothetical questions only those limitations he finds credible. *Schmidt*, 496 F.3d at 845-846.

In this case, the ALJ approvingly cited Dr. Martin's opinion, including the precise limitations that plaintiff complains were improperly excluded from the hypothetical questions. Thus, the ALJ believed these limitations existed. Moreover, the VE gave no indication that he independently learned of and considered these additional limitations. Accordingly, the exclusion of these limitations from the ALJ's hypothetical questions to the VE was erroneous.

09 C 2211

ORDERED: Plaintiff Laura D. Lennon's motion for summary judgment [23] is granted. Judgment in favor of plaintiff, reversing defendant's decision and remanding the case pursuant to sentence four of 42 U.S.C. § 405(g), shall be set forth on a separate document and entered in the civil docket. *See* Fed.R.Civ.P. 58(a), 79(a).

ENTER:

_____
GEORGE W. LINDBERG
Senior U.S. District Judge

Dated: July 6, 2010